TYLER J. BOWLES & ASSOCIATES, LLC
CONSULTANTS IN ECONOMICS AND FINANCE
4856 WEST 100 SOUTH
WESTON, IDAHO 83286

TYLER J. BOWLES, PH.D., CPA, CVA
(435) 512-0707
tyler.bowles@q.com

June 4, 2013

Mr. John D. Bowers
Bowers Law Firm
P.O. Box 1550
Afton, Wyoming 83110

        Re: Connie Langille

Dear Mr. Bowers:

At your request, I have prepared a report on the economic losses suffered by Ms. Connie
Langille as a result of injuries she sustained on December 29, 2011. Table 1 provides a summary
of my opinions. The tables, notes, footnotes, and appendices that follow Table 1 provide the
basis for my opinions and the information considered in forming my assessment of economic
damages. I also have attached a statement of qualifications, curriculum vitae, fee schedule, and
four-year testimony history. The curriculum vitae includes a list of publications. If you have
any questions, please call me.

Sincerely,

*[signature]*

Tyler J. Bowles, Ph.D., CPA

**EXHIBIT**

_A_

Table 1.     Summary of Economic Losses
             Connie Langille

| Description | Amount | Reference |
|---|---|---|
| Past Medical and Related Expenses | $176,301 | Note 1 |
| Cost of Gratuitous Care Provided by Paul Langille | 13,872 | Note 2 |
| Present Value of Lost Earning Capacity | 335,023 | Table 2 |
| Present Value Cost of Future Medical Care | 24,831 | Table 3 |
| Present Value of Lost Household Services Capacity | 168,480 | Table 4 |
| **Total Economic Loss** | **$718,507** | |

Table 2.    Present Value of Lost Earning Capacity
            Connie Langille

| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
|---|---|---|---|---|---|---|
| | | | Uninflated Dollars | | | Present Value of Lost |
| Year | Age at Jan. 1 | Cumulative Number of Years (Note 3) | Pre-injury Earning Capacity (Note 4) | Post-injury Earning Capacity (Note 5) | Lost Earning Capacity | Earning Capacity (Note 6) |
| 2012 | 50 | 1.0 | $25,771 | $0 | $25,771 | $25,771 |
| 2013 | 51 | 2.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2014 | 52 | 3.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2015 | 53 | 4.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2016 | 54 | 5.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2017 | 55 | 6.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2018 | 56 | 7.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2019 | 57 | 8.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2020 | 58 | 9.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2021 | 59 | 10.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2022 | 60 | 11.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2023 | 61 | 12.0 | 25,771 | 0 | 25,771 | 25,771 |
| 2024 | 62 | 13.0 | 25,771 | 0 | 25,771 | 25,771 |

**Present Value of Lost Earning Capacity**                    $335,023

Table 3.    Present Value Cost of Future Medical Care and Related Expenses
            Connie Langille

| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Uninflated Dollars | | | | Present Value of Total |
| Year | Age at Jan. 1 | Cumulative Number of Years (Note 7) | Psychological Counseling (Note 8) | Physical Therapy (Note 8) | Future Surgery (Note 8) | Gym Membership (Note 9) | Ibuprofen (Note 9) | Total Annual Costs | Annual Costs (Note 6) |
| 2014 | 52 | 1.0 | $5,200 | $1,031 | TBD | $360 | $240 | $6,831 | $6,831 |
| 2015 | 53 | 2.0 | | | | 360 | 240 | 600 | 600 |
| 2016 | 54 | 3.0 | | | | 360 | 240 | 600 | 600 |
| 2017 | 55 | 4.0 | | | | 360 | 240 | 600 | 600 |
| 2018 | 56 | 5.0 | | | | 360 | 240 | 600 | 600 |
| 2019 | 57 | 6.0 | | | | 360 | 240 | 600 | 600 |
| 2020 | 58 | 7.0 | | | | 360 | 240 | 600 | 600 |
| 2021 | 59 | 8.0 | | | | 360 | 240 | 600 | 600 |
| 2022 | 60 | 9.0 | | | | 360 | 240 | 600 | 600 |
| 2023 | 61 | 10.0 | | | | 360 | 240 | 600 | 600 |
| 2024 | 62 | 11.0 | | | | 360 | 240 | 600 | 600 |
| 2025 | 63 | 12.0 | | | | 360 | 240 | 600 | 600 |
| 2026 | 64 | 13.0 | | | | 360 | 240 | 600 | 600 |
| 2027 | 65 | 14.0 | | | | 360 | 240 | 600 | 600 |
| 2028 | 66 | 15.0 | | | | 360 | 240 | 600 | 600 |
| 2029 | 67 | 16.0 | | | | 360 | 240 | 600 | 600 |
| 2030 | 68 | 17.0 | | | | 360 | 240 | 600 | 600 |
| 2031 | 69 | 18.0 | | | | 360 | 240 | 600 | 600 |
| 2032 | 70 | 19.0 | | | | 360 | 240 | 600 | 600 |
| 2033 | 71 | 20.0 | | | | 360 | 240 | 600 | 600 |
| 2034 | 72 | 21.0 | | | | 360 | 240 | 600 | 600 |
| 2035 | 73 | 22.0 | | | | 360 | 240 | 600 | 600 |
| 2036 | 74 | 23.0 | | | | 360 | 240 | 600 | 600 |
| 2037 | 75 | 24.0 | | | | 360 | 240 | 600 | 600 |
| 2038 | 76 | 25.0 | | | | 360 | 240 | 600 | 600 |
| 2039 | 77 | 26.0 | | | | 360 | 240 | 600 | 600 |
| 2040 | 78 | 27.0 | | | | 360 | 240 | 600 | 600 |
| 2041 | 79 | 28.0 | | | | 360 | 240 | 600 | 600 |
| 2042 | 80 | 29.0 | | | | 360 | 240 | 600 | 600 |
| 2043 | 81 | 30.0 | | | | 360 | 240 | 600 | 600 |
| 2044 | 82 | 31.0 | | | | 360 | 240 | 600 | 600 |

**Present Value Cost of Future Medical Care and Related Expenses**                                        $24,831

Table 4.  Present Value of Lost Household Services Capacity
Connie Langille

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| Year | Age at Jan. 1 | Cumulative Number of Years (Note 7) | Uninflated Value of Lost Household Services Capacity (Note 10) | Present Value of Lost Household Services Capacity (Note 6) |
| 2012 | 50 | 1.0 | $5,616 | $5,616 |
| 2013 | 51 | 2.0 | 5,616 | $5,616 |
| 2014 | 52 | 3.0 | 5,616 | $5,616 |
| 2015 | 53 | 4.0 | 5,616 | $5,616 |
| 2016 | 54 | 5.0 | 5,616 | $5,616 |
| 2017 | 55 | 6.0 | 5,616 | $5,616 |
| 2018 | 56 | 7.0 | 5,616 | $5,616 |
| 2019 | 57 | 8.0 | 5,616 | $5,616 |
| 2020 | 58 | 9.0 | 5,616 | $5,616 |
| 2021 | 59 | 10.0 | 5,616 | $5,616 |
| 2022 | 60 | 11.0 | 5,616 | $5,616 |
| 2023 | 61 | 12.0 | 5,616 | $5,616 |
| 2024 | 62 | 13.0 | 5,616 | $5,616 |
| 2025 | 63 | 14.0 | 5,616 | $5,616 |
| 2026 | 64 | 15.0 | 5,616 | $5,616 |
| 2027 | 65 | 16.0 | 5,616 | $5,616 |
| 2028 | 66 | 17.0 | 5,616 | $5,616 |
| 2029 | 67 | 18.0 | 5,616 | $5,616 |
| 2030 | 68 | 19.0 | 5,616 | $5,616 |
| 2031 | 69 | 20.0 | 5,616 | $5,616 |
| 2032 | 70 | 21.0 | 5,616 | $5,616 |
| 2033 | 71 | 22.0 | 5,616 | $5,616 |
| 2034 | 72 | 23.0 | 5,616 | $5,616 |
| 2035 | 73 | 24.0 | 5,616 | $5,616 |
| 2036 | 74 | 25.0 | 5,616 | $5,616 |
| 2037 | 75 | 26.0 | 5,616 | $5,616 |
| 2038 | 76 | 27.0 | 5,616 | $5,616 |
| 2039 | 77 | 28.0 | 5,616 | $5,616 |
| 2040 | 78 | 29.0 | 5,616 | $5,616 |
| 2041 | 79 | 30.0 | 5,616 | $5,616 |

**Present Value of Lost Household Services Capacity**          $168,480

Notes:

1.   Past medical and related expenses have been provided by Ms. Connie Langille.[1] This list
     will need to be updated prior to trial.  It is also my understanding that interest may be
     available on these past losses.  This interest can be calculated at the time of trial.

2.   Ms. Langille's spouse, Mr. Paul Langille, took approximately two months off of work
     after the date of the incident (i.e., December 29, 2011) to care for Connie.[2]  Paul's wages
     for 2011 were $83,232 or $6,936 per month.[3]  Two months at this wage rate yields a cost
     of the gratuitous care provided by Paul of $13,872.

3.   Connie was 50 years old at the time of the incident and had a worklife expectancy of 13.0
     years.[4]  For purposes of computational simplicity, I have assumed that these working
     years would have occurred consecutively. This assumption does not have a material effect
     on the estimate of losses.

4.   Ms. Langille completed professional truck-driver school in 2006 and was self employed
     as a pilot car driver from 2007 through the date of the incident.[5]  Her business reported
     the following revenues and expenses:[6]

| Year | Gross Revenue | Car & Truck Expenses | Travel Expenses | Meals Expenses | Profit (Loss) |
|------|---------------|----------------------|-----------------|----------------|---------------|
| 2007 | $38,431 | $28,676 | $2,019 | $2,587 | $1.737 |
| 2008 | 68,221 | 47,556 | 612 | 8,892 | 4,272 |
| 2009 | 41,863 | 23,415 | 2,673 | 5,538 | 3,414 |
| 2010 | 35,982 | 27,460 | 1,875 | 9,651 | (7,859) |
| 2011 | 43,018 | NA | NA | NA | NA |

---

[1] See Plaintiff Connie Langille's Response to Defendants' First Set of Interrogatories, Answer No. 17.

[2] See Paul Langille's deposition testimony, p. 57 and Connie Langille's deposition testimony, pp. 175-176.

[3] See Paul's 2011 W-2 statement.

[4] Skoog, Gary R., James A. Ciecka, and Kurt V. Krueger, "The Markov Process Model of Labor Force
Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors" *Journal of
Forensic Economics* 22(2, 2011):165-229.  Appendix A contains a copy of the relevant work-life table.

[5] See Connie's Answers to Interrogatories, Nos. 20 and 21.  Also see Connie's deposition, pp. 42-45.

[6] See Connie's tax returns (Schedule C) for 2007 through 2010 and Form 1099-Misc for 2011 from Mullen
Crane & Transport.

In my opinion, the profits of this business, as reported on Schedule C of her tax return, do not represent her earning capacity. The tax law is not necessarily designed to measure earning capacity and the car and truck expenses and meals expenses noted above may not reflect economic reality. Further, Connie had the training and experience to work as a truck driver. Therefore, based on discussions with Connie,[7] discussions with another pilot-car driver, Jackie Smith,[8] and on the tax return information above, in my opinion the reported wages for light truck drivers (SOC 53-3033) provides a reasonable estimate of Connie's earning capacity. These wage rates are as follows:[9]

| Area | Employment | 2012 Median Hourly Wage |
|---|---|---|
| Rural Eastern Idaho, including Caribou County | 200 | $19.88 |
| Pocatello, ID MSA | 150 | 10.19 |
| All Idaho | 3,460 | 12.39 |
| All Wyoming | 1,330 | 16.62 |

Based on these data and the information referenced above, I have estimated Connie's pre-injury earning capacity at $12.39 per hour or $25,771 per year (i.e., $25,771 = $12.39 x 2,080 hrs.)

5.  Connie has not worked since the incident.[10] Dr. Suzanne M. Pinto concludes that Connie suffers from post-traumatic stress disorder, major depression, general malaise, and notes significant medical issues secondary to the motor vehicle accident.[11] Regarding the effects of Connie's injuries on her earning capacity, Ms. Kathy Gammon, a vocational expert, concludes ". . . that Ms. Langille is NOT currently eligible for a return to the competitive labor market . . ."[12]

6.  Future losses are projected in uninflated dollars. Therefore, the present value of each loss has been calculated based on a net discount rate, which is approximately the difference between the interest rate on a secure investment (e.g., U.S. Treasury securities[13]) and the

---

[7]In the preparation of this report, I interviewed Connie by telephone on several different occasions.

[8]Connie references Jackie Smith in her deposition, pp. 171-72. I interviewed Jackie Smith by telephone on June 3, 2013.

[9]Appendix B provides a copy of these data.

[10]Connie Langille deposition, p. 59.

[11]Psychological Assessment, Dr. Suzanne M. Pinto, Ph.D., P.C., March 27, 2013, pp. 12-13. Also see Independent Medical Examination, Dr. Brian Tallerico, D.O., April 11, 2013.

[12]Vocational and Earnings Capacity Assessment, Ms. Kathy Gammon, CRC, May 6, 2013, p. 20.

[13]In Jones & Laughlin Steel Corp. v. Pfeifer (462 U.S. 523), the U.S. Supreme Court provides the rationale for using the yield on Treasury securities for discounting future damages in personal injury cases.

growth rate in wages. A net discount rate of zero percent has been used to discount future losses. This net discount rate is consistent with current interest rates and the expected wage growth rate.[14]

7.      Connie is 52 years old and has a life expectancy of 31 years to approximately age 83.[15] The loss of household services has been projected to approximately age 79 to account for relative inactivity toward the end of life expectancy.

8.      The cost of psychological counseling and physical therapy has been provided by Ms. Gammon.[16]

9.      The costs of gym membership and Ibuprofen are based on my discussions with Connie.[17]

10.     At the time of the incident, Connie and Paul lived in a typical single-family home on a large lot in Soda Springs, Idaho. Previous to her injuries, Connie reports that she provided the typical household services in and around the home (i.e., cooking, housework, yard work, home repairs and maintenance, shopping, etc.).[18] Survey data indicate that married women with no children at home spend the following amounts of time (in hours per week) on household activities:[19]

| Activity | Work Full Time |
|---|---|
| Inside housework | 5.40 |
| Food cooking and cleanup | 4.42 |
| Pets, home and vehicles | 2.76 |
| Household management | 1.23 |
| Shopping | 3.27 |
| Obtaining services | 0.12 |
| Travel for household activity | 2.33 |
| Total weekly hours | 19.53 |

---

[14]See the material in Appendix C.

[15]Centers for Disease Control and Prevention, "United States Life Tables, 2008." *National Vital Statistics Reports*, 61 (3, September 24, 2012). Appendix D provides a copy of the relevant life expectancy table.

[16]Gammon report, pp. 25-26.

[17]Also see Connie's deposition, pp. 144-145.

[18]Interview.

[19]See the material in Appendix E.

Connie reports that her injuries have significantly limited her ability to perform household services.[20]  Based on discussions with Connie, the opinions of Dr. Pinto and Dr. Tallerico, and the vocational opinions of Ms. Gammon, I have estimated his loss of household services capacity at 9.0 hours per week (468 hours per year). I have valued these hours at $12.00 per hour.[21]

General Note:

In addition to the material specifically referenced above, I reviewed the following in the preparation of this report:

-    Accident Report
-    Amended Complaint
-    Written Statements by Connie Langille
-    Plaintiff Paul Langille's Answers to Defendants' First Set of Interrogatories
-    Paul 2012 w-2 statement and May 2013 pay stub

---

[20] Interview.

[21] Appendix F provides supporting information for the $12.00 wage rate.

9